# CHARLESTON.

PITTINGER AND PUGH, *Executors v.* MARSHALL, *et al.*

Submitted June 18, 1901. Decided November 23, 1901.

1. CHANCERY CAUSE—*Commissioner—Legislator.*

Where a chancery cause is referred to a commissioner to settle the accounts of a trustee who is a member of the legislature, it is irregular and illegal for such commissioner to proceed to take proof, settle and determine such accounts

during the absence of such legislator, in attendance on the session of the legislature, and for one day for every twenty miles he is necessarily compelled to travel in going to and returning from such session. (p. 232).

2. STATUTE CONSTRUED—*Legislator's Rights.*

The trials of civil, criminal and chancery suits are all included within the inhibition of section 5, chapter 12, Code. (p. 232).

Appeal from Circuit Court, Hancock County.

Bill by John F. Pittinger and P. A. Pugh, executors, against Oliver S. Marshall and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

JOHN R. DONOHOO, for appellants.

E. A. HART, for appellees.

DENT, JUDGE:

Oliver S. Marshall complains of certain decrees rendered against him by the circuit court of Hancock County in a certain chancery suit therein pending wherein John F. Pittinger and P. A. Pugh, executors, were plaintiffs and Marshall and others were defendants.

The suit was instituted September rules, 1898, for the purpose of requiring Marshall as trustee in certain deeds of trust executed by Abraham Pittinger, securing certain debts, to render an account of the proceeds of the sale under said trusts and pay over the balance due to the plaintiffs as executors of the last will and testament of said Abraham Pittinger, deceased. On the 9th day of November, 1898, an order of reference was entered by default. The commissioner gave notice by publication that on the 26th day of January, 1899, he would proceed to execute such reference. He then proceeded to execute the reference and continued the same from time to time until the 16th day of March, 1899, when he completed the same. On the 8th day of April, 1899, the court heard the cause on the commissioner's report and the exceptions thereto of the defendants O. S. Marshall and Ellen Pittinger, overruled the exceptions and entered a decree against Marshall for the sum of seven hundred and thirty-eight dollars and the costs of the suit. On the 22d day of May, 1899, Marshall after notice to the plaintiffs moved the court to

correct the decrees in the cause for errors of law on the face thereof, and the other proceedings therein. The court overruled the motion on the grounds that the final decree was not a decree by default, and hence it was beyond the power of the court to make the correction of errors existing prior thereto.

While the defendant Marshall filed no answer, but having appeared and filed exceptions to the commissioner's report, the decree overruling such exceptions cannot be considered as on a bill taken for confessed, but is an adjudication between the parties that cannot be corrected otherwise than by appeal. *Watson* v. *Wigginton,* 28 W. Va: 533. Hence the court committed no error in overruling the motion to correct this decree, for it could not sit in review of its own conclusions. The question then presents itself as to whether the court erred in overruling the exceptions to the commissioner's report.

The second of these exceptions is the most important, and should be first considered. If sustained the decree must be reversed. The other exceptions relating to the evidence and findings of the commissioner will thereby be rendered unimportant, as the commissioner's report will have to be wholly vacated and annulled.

The exception is as follows: "Because at the time advertised for taking testimony it was impossible for him (Marshall) to be present, and that he had no notice of any adjournment. Owing to his public duties as a member of the legislature, it was impossible to give any private business attention from the 10th day of January to the beginning of the term of this court." The session of the legislature began on the 10th day of January, 1899, and lasted until the last of February, forty-five days. The sittings of the commissioner began on the 26th day of January, and he closed his report on the 16th day of March. So that during almost the whole session of the legislature the commissioner was engaged in taking testimony and making up his report. No notice was served on Marshall, but the matter was carried on in his absence by publication. Mr. Marshall was a senator, and as the court judicially knows, was president of the senate engaged in discharging his public duties at the capitol of the State. If there was no law on the subject comity between the different branches of the State government should have been sufficient to have prevented adverse personal action against him while engaged in the discharge of his public duties. Section 5, chapter

12, Code, provides that "Any suit may be commenced and prosecuted against a member of the legislature, if his person be not taken into custody or imprisoned. But no trial shall be had or judgment rendered in any such suit, nor shall any execution or attachment be levied upon the property of such member during the sessions of the legislature and for one day for every twenty miles he is necessarily compelled'to travel in going to and returning from such session." The object of this enactment was to relieve the member of the legislature during its sessions and a reasonable time before and after from compulsory attention to private business by any suit of any character that would interfere with him in the discharge of his public duties. The mere service of process or steps in the prosecution of a suit which would not require the presence or personal attention of the legislator was exempted, but when it came to a trial of a matter in which he was personally interested, whether before a'commissioner or otherwise, which required his personal presence and attention, it is forbidden by the statute for the period limited therein. If such were not the law a legislator could be so embarrassed and harassed as to be wholly unfitted for the discharge of his public duties or he could be entirely detained away from the sessions of the legislature to the great detriment of the public interests and the hindrance of its business. If he chose to serve the public he might be made to suffer great private loss.

In the case of *McPherson* v. *Nesmith and wife,* 3 Grat. 237, the court of appeals of Virginia under a statute similar in substance set aside an office judgment against a member of the legislature.

In the present case the commissioner without personal service of notice and in his absence during the session of the legislature when it was impossible for him to be present without wholly neglecting the discharge of his public duties proceeds to hear evidence, settle his accounts, finds a large balance due from him as a trustee and reports the same to court without affording him the opportunity of a hearing. At the next term of court he excepts to the commissioner's report for this reason and the court overrules the exception and decrees against him according to such finding. The finding of the commissioner is just as much within the purview and intention of the statute as any other trial. It is therefore irregular and illegal, and should have been set aside by the court.

For this reason alone the decree of the 8th day of April, 1899, is reversed, the exception to the commissioner's report is sustained and the report set aside, and annulled and this cause is remanded to the circuit court with leave to said Marshall to make such appearance and defense to such suit as may be proper and right, and that the same be further proceeded in according to the rules and principles governing courts of equity.

*Reversed.*